482 So.2d 1378 (1986)
Jessie Mae HARRIS, Appellant,
v.
The LEWIS STATE BANK, Appellee.
No. BE-429.
District Court of Appeal of Florida, First District.
January 23, 1986.
Rehearing Denied March 5, 1986.
*1379 Samuel T. Adams, Panama City, for appellant.
Guyte P. McCord, III of MacFarlane, Ferguson, Allison and Kelly, Tallahassee, for appellee.
BARFIELD, Judge.
The parties are before this court for the third time on an action by appellant Harris *1380 alleging false imprisonment, malicious prosecution, negligence, and fraud against appellee Lewis State Bank. The pertinent facts are recited in Harris v. Lewis State Bank, 436 So.2d 338 (Fla. 1st DCA 1983) (Harris I). Appellant initially sued the bank for malicious prosecution and false imprisonment. Without filing an answer to appellant's complaint, the bank moved for summary judgment, which was granted by the trial court. On appeal, this court reversed the summary judgment as to the false imprisonment count against the bank, but affirmed as to the malicious prosecution count, stating that the relationship between the misinformation imparted by the bank and appellant's later detention, arrest and prosecution, "... is simply too tenuous to ever reach the level of legal causation and malice required in a malicious prosecution action." Id. at 340-41.
Upon remand to the trial court, appellant moved to amend her complaint to correct typographical errors and to state additional causes of action for negligence and for fraud and deceit. The proposed amended complaint retained the factual allegations of the malicious prosecution count, notwithstanding this court's opinion, because these allegations formed the basis for the false imprisonment count and for the negligence and fraud counts sought to be added. The trial court denied the motion to amend, on the grounds that the new causes of action were barred under the doctrines of res judicata or law of the case, and that they were also barred under the principles enunciated in Dober v. Worrell, 401 So.2d 1322 (Fla. 1981) and Pokorny v. First Federal Savings & Loan Association of Largo, 382 So.2d 678 (Fla. 1980). This court treated the appeal of that order as a petition for writ of certiorari, granted the petition and quashed the order "... insofar as it denies leave to add counts stating causes of action in negligence and fraud and deceit." Harris v. Lewis State Bank, 451 So.2d 924 (Fla. 1st DCA 1984) (Harris II).
Upon remand, the trial court entered an order granting the motion to amend in accordance with the mandate of this court. The bank then moved to dismiss all causes of action against it, including the action for false imprisonment.[1] In the order from which this appeal is taken, the trial court granted the bank's motion and dismissed all counts of the complaint relating to the bank, including the false imprisonment count. We here attempt to disentangle this case from the web of confusion in which it Has become enmeshed, hopefully without further confusing appellant's counsel and the trial court.

JURISDICTION
The order from which this appeal was taken dismissed all the counts against the bank, "with leave to the plaintiff to file any further amended counts she may desire." On its face, this order is non-final and therefore non-appealable. See Moylan v. Estes, 110 So.2d 48 (Fla. 3d DCA 1959) in which the plaintiff, under similar circumstances, sought appellate review by certiorari. The parties were cited to Moylan and instructed to discuss this court's power to review the subject order. After hearing their arguments, and upon due consideration, we treat the notice of appeal in this case as a petition for writ of certiorari. In order to clarify the problems presented, so as to reach a just and reasonable solution, we must begin at the beginning, with a *1381 reconsideration of the problems addressed by this court in Harris I.

MALICIOUS PROSECUTION
The parties do not dispute the existence of three of the elements required to prove the tort of malicious prosecution: (1) The commencement and continuation of a criminal judicial proceeding; (2) its bona fide termination in favor of the plaintiff, and (3) damages resulting to the plaintiff. A fourth element, the presence of malice, may be inferred from the absence of probable cause for such prosecution, the fifth element.[2] The sixth element, legal causation, requires a showing that the defendant was in some way responsible for the criminal prosecution.[3] Although legal causation is usually established by the signing of a complaint or affidavit, there is authority for the proposition that the giving of information may constitute the initiation of prosecution, if the information was known by the giver to be false.[4] The real instigator cannot escape liability by showing he was not the prosecutor of record.[5] The test is whether the defendant's action was the proximate and efficient cause of putting the law in motion.[6] Although one may not have intended to institute a criminal proceeding, he may be liable if he afterward continued the prosecution or gave it momentum.[7]
Appellant has alleged[8] that the bank, through its employees, told John Lewis that someone was forging his daughter's signature, and failed to disclose to the investigating officer[9] and later to the prosecutor *1382 the true circumstances surrounding the withdrawals (which information would have resulted in cessation of the proceedings against appellant). A jury question was therefore presented as to whether, notwithstanding that the bank officials did not swear out the complaint, the bank was responsible for appellant's arrest and prosecution.[10] The trial court's order granting summary judgment was not proper and should not have been affirmed on this ground.
A separate question to be considered is whether appellant established an absence of probable cause for her criminal prosecution, from which the jury could infer malice. Probable cause has been defined as "a reasonable ground of suspicion, supported by the circumstances, that the person accused is guilty of the offense charged."[11] Where it would appear to a "cautious man" that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information.[12] A lack of probable cause may be established by proof that a criminal proceeding was instituted on facts that could as well be explained innocently.[13] Appellant has alleged that the bank, through its employees,[14] knew or should have known[15] that appellant had been authorized and even encouraged by the bank to treat the money in John Lewis' account as her own at the time it led Lewis to believe a forgery had occurred, and that it withheld this information from the police and prosecutor.[16] A jury question was therefore presented[17] as to whether probable cause existed for appellant's prosecution and whether malice could be inferred by the jury[18] from the absence of probable cause and the bank's actions, both before *1383 and after her arrest. Under these circumstances, summary judgment was not appropriate and should not have been affirmed.[19]
This court is authorized to reconsider and reverse a previous ruling that has become the "law of the case." Strazzulla v. Hendrick, 177 So.2d 1 (Fla. 1965). An appellate court's duty to administer justice under the law outweighs its duty to be consistent.[20] While the law of the case will seldom be reconsidered or reversed, an exception to the general rule binding the parties to the law of the case may be made in unusual circumstances where manifest injustice will result from a strict and rigid adherence to the rule. Id. at 4. We are convinced that this court's ruling in Harris I affirming the summary judgment as to the malicious prosecution count was erroneous and will result in manifest injustice.[21] We therefore reverse that ruling and hold that appellant's complaint states a cause of action for malicious prosecution and that at this stage there exist disputed issues of material fact so that disposition by summary judgment is not appropriate.

FALSE IMPRISONMENT
The trial court erred in dismissing appellant's action for false imprisonment against the bank. Appellant's complaint states a cause of action for false imprisonment. This court's opinion in Harris I, reversing the summary judgment relating to the claim for false imprisonment, precluded the trial court from granting the bank's motion to dismiss as to the count for false imprisonment. Moylan v. Estes, 110 So.2d at 49.

NEGLIGENCE, FRAUD AND DECEIT
The trial court's order denying appellant's motion to amend her complaint to add causes of action for negligence and fraud, quashed by this court in Harris II, was based upon the finding that:
[T]he purported causes of action sought to be pled by the amendment are barred under the doctrines of res judicata or law of the case based on the opinion of the District Court in this cause reported at 436 So.2d 338 and further based on the principles enunciated in the cases of Dober v. Worrell, 401 So.2d 1322, and Pokorny v. First Federal Savings and Loan Association of Largo, 382 So.2d 678.
Notwithstanding this court's apparent rejection of these grounds in Harris II, the bank reasserted them in its motion to dismiss, along with other grounds. None of the grounds stated support the order.
Lewis State Bank asserts that the counts for false imprisonment, negligence and fraud must fail because they are based upon appellant's prosecution, damages for which may only be sought in a suit for malicious prosecution. This erroneous assertion is apparently based upon a misreading of Pokorny v. First Federal Savings and Loan Association of Largo, which involved a suit for false imprisonment. The case at issue is factually dissimilar from Pokorny, in which a bank's employees reported to the FBI that an attempted robbery had occurred and identified the plaintiffs, deaf mutes, as the suspects. The plaintiffs were subsequently apprehended by FBI agents, handcuffed and detained for one hour and released, without charges having been filed. The court noted that the bank's employees did not detain the plaintiffs, nor did they request that plaintiffs be arrested. The court found that the actions of the bank's employees did not constitute "direct procurement" of an arrest, and noted in dicta[22] that Florida courts do not recognize a separate tort for "negligently" swearing out a warrant, the *1384 remedy for which would be a civil suit for malicious prosecution. The holding in Pokorny was that an honest, good faith mistake in reporting an incident which results in an arrest does not make the informant liable when he did not in fact request any detention. It is at least arguable that in the case sub judice, the misinformation allegedly reported to the police was not the result of an honest, good faith mistake on the part of the bank. The allegations upon which all the counts of appellant's complaint are based include acts beyond the innocent misunderstanding portrayed in Pokorny. The dicta in Pokorny do not support the bank's assertions.
In Dober v. Worrell, the court held that failure to raise an affirmative defense before a trial court considering a motion for summary judgment precludes raising that issue for the first time on appeal, and that the district court's remand after its affirmance of the summary judgment to allow repleading of the affirmative defense was inappropriate. Lewis State Bank apparently read this case to support the proposition that, once this court had ruled on the summary judgments before it, the further proceedings on remand could not include amendment of the complaint to state new causes of action. This argument was made and rejected in Harris II and may not, under the principle of law of the case, be reargued to the trial court. Neither will we consider reversal of our earlier decision on this issue.
As to the bank's claim that the causes of action for negligence and fraud are barred under the doctrines of res judicata or law of the case based on this court's first Harris opinion, this argument was also made and rejected in Harris II. Where successive appeals are taken in the same case there is not, technically speaking, a question of res judicata, because the same suit, and not a new and different one, is involved.[23] In such a circumstance, the appropriate doctrine to be applied is law of the case. Unlike res judicata, the doctrine of law of the case does not ordinarily extend to points of law that might have been, but were not presented and determined on the previous appeal.[24] When, after an appeal, an amended complaint is filed containing allegations not contained in the original complaint, the decision on the appeal is not binding as to the newly alleged facts.[25] Where the opinion of an appellate court in a prior review clearly rejects the trial court's holding that no recovery can be had, the trial court's subsequent dismissal of the petitioner's complaint impliedly, if not directly, contravenes the law of the case as established in the prior appeal and is inconsistent therewith. Moylan v. Estes, 110 So.2d at 49.
The bank also asserts that appellant's complaint failed to state a cause of action for negligence because it failed to allege the existence of a duty owed by the bank to appellant. To withstand a motion to dismiss, a complaint for negligence must contain three elements: 1) existence of a duty on the part of the defendant to protect the plaintiff from injury; 2) failure of the defendant to perform this duty; and 3) injury to the plaintiff resulting from such failure. It is sufficient if ultimate facts are alleged showing the relation between the parties, the act or omission causing the injury, and that the act was negligently done or omitted.[26] Fundamentally, the duty of a person to exercise care, and his consequent liability for negligence, depends on the tendency of his acts under the circumstances as they are known or should be known to him. The foundation of liability for negligence is knowledge, actual or constructive, of the peril that subsequently *1385 results in injury.[27] Because appellant's complaint sufficiently alleged a relationship voluntarily entered into by the bank which created a duty on the part of the bank to protect appellant from false accusations of forgery and theft, and because the allegations of the complaint, if taken as true, indicate that the bank had knowledge, or by the exercise of reasonable diligence would have had knowledge, that its acts and omissions were likely to result in injury to appellant, the trial court improperly dismissed the count for negligence. The count for fraud and deceit was not attacked separately in the motion to dismiss; its dismissal was apparently based on the grounds previously rejected in Harris II. The trial court's dismissal of the counts alleging negligence and fraud was therefore in error.

PUNITIVE DAMAGES
Punitive damages may be recovered by the plaintiff in an action for malicious prosecution when there is proof of actual malice, or where the defendant's act was willfully done in a wanton and oppressive manner and in conscious disregard of civil obligations.[28] The plaintiff in an action for false imprisonment is entitled to punitive damages on a proper showing of malice. For detention to be considered "malicious," the defendant need not act with anger, malevolence, or vindictiveness toward the plaintiff. It is sufficient if the act causing the wrongful restraint is without reasonable cause. However, an award of punitive damages generally is improper in an action for false imprisonment in the absence of a showing of moral turpitude or wanton and outrageous disregard of the plaintiff's rights.[29] Where there is evidence of excessive and reckless disregard of plaintiff's rights, the question of punitive damages should be submitted to the jury.[30]
To sustain an award of punitive damages for a negligent act, the act or omission complained of must occur in a manner which evinces a willful or wanton disregard of consequences, which presupposes the defendant's knowledge or awareness of the risk to plaintiff's rights.[31] A person who has sustained a pecuniary loss as a result of fraudulent misrepresentations may recover punitive damages from the wrongdoer, provided there has been an award of compensatory damages, where the fraud is characterized by malicious and outrageous aggravation, or where the fraud is accompanied by an unlawful taking or trespass on the part of the defendant. Allegations that the defendant perpetrated a fraud with willful and wanton disregard of the rights of the plaintiff have been held sufficient to plead an adequate predicate for punitive damages.[32]
Appellant realleged separate acts of the bank in each of her counts.[33] If the allegations are taken as true, as they must on review of a motion to dismiss, and the fact that the bank employees' knowledge can be imputed to the bank is taken into account, the complaint sufficiently alleges a willful disregard by the bank of the consequences to appellant of its misrepresentations and failures to disclose pertinent information to appellant, John Lewis, the sheriff's investigator, and the prosecutor.[34] Therefore, the request for punitive damages in each count should not have been dismissed.
We find that the trial court departed from the essential requirements of law in dismissing each count of appellant's amended complaint. To avoid further suggestion of stonewalling, it is now time, *1386 after more than three and one-half years, for the defendant bank to file its answer to the complaint, for discovery to be had, and for disposition to follow upon the proof or absence of facts.
The trial court's order is QUASHED, and the case is REMANDED for further proceedings consistent with this opinion.
ERVIN, J., concurs.
JOANOS, J., concurs in part and dissents in part, with written opinion.
JOANOS, Judge, concurring in part, dissenting in part.
I concur in the majority opinion except in its reversal of this court's ruling in Harris v. Lewis State Bank, 436 So.2d 338 (Fla. 1st DCA 1983), referred to as "Harris I," as to the malicious prosecution cause of action. In short, I continue to believe that, "While [John] Lewis' initial report to law enforcement officials may have been prompted by the erroneous information he received from the Bank, the relationship between that information and Harris' later detention, arrest and prosecution is simply too tenuous to ever reach the level of legal causation and malice required in a malicious prosecution action." Harris I, 436 So.2d at 340-341.
NOTES
[1] The grounds for the motion are essentially mirrored by the issues on appeal:

1. Whether a suit for malicious prosecution is the only cause of action available to an individual for recovery of damages for arrest and criminal prosecution.
2. Whether the actions for negligence and fraud are barred under the doctrines of res judicata or law of the case.
3. Whether the actions for negligence and fraud are barred under the principles of Dober v. Worrell and Pokorny v. First Federal Savings & Loan Association of Largo (cited in the text).
4. Whether the circuit court erred in dismissing the action for false imprisonment against the bank.
5. Whether the complaint alleges the existence of a duty owed by the appellee to appellant.
6. Whether the complaint alleges a basis for an award of punitive damages.
[2] Harry Pepper & Associates, Inc. v. Lasseter, 247 So.2d 736 (Fla. 3d DCA 1971), cert. den., 252 So.2d 797 (Fla. 1971).
[3] See cases cited in 24 Fla.Jur.2d, False Imprisonment and Malicious Prosecution § 18 n. 14.
[4] Annot., 66 A.L.R.3d 10, 16 (1975).
[5] Campbell v. Yellow Cab Co., 137 F.2d 918 (3d Cir.1943).
[6] See 52 Am.Jur.2d, Malicious Prosecution § 25.
[7] Killen v. Olsen, 59 So.2d 524 (Fla. 1952).
[8] The allegations of the amended complaint, which have not as yet been denied by an answer, assert nine separate actions by the bank upon which liability is grounded:

1. On July 1, 1980, the bank mailed a statement of account to appellant at her former address, "General Delivery, Woodville, Florida" and the statement was forwarded to her residence in Crawfordville.
2. On July 19, 1980, when appellant presented the statement to a teller at the bank and stated that she was not familiar with the name "John Lewis", the teller advised her that "someone must have put some money in the bank for you" and advised that she could withdraw funds from the account.
3. On July 21, 1980, when appellant returned to the bank, another teller examined the account statement and appellant's social security and voter registration cards, then instructed her how to fill out a withdrawal slip and gave her $500 from the account.
4. This same teller also suggested that appellant have her picture taken for an I.D. card to simplify future withdrawals, and this was done.
5. Between July 23 and September 17, 1980, the bank permitted appellant to make four additional withdrawals from the account totalling $475, without comparing her signature with the authorized signatures on file for the account, or requiring her to produce an account passbook, or making any inquiry of its depositor, John Lewis, regarding appellant.
6. On September 22, 1980, when John Lewis discovered that $975 had been withdrawn from his account without proper authorization, the bank did not reveal to him what had transpired between bank employees and appellant, but instead led him to believe that someone with criminal intent had forged the authorized signature of his daughter in Miami.
7. On January 1, 1981, the bank mailed a statement of the new account which it had set up for John Lewis to appellant.
8. On January 12, 1981, when appellant once more came to the bank, she was seized by bank employees who notified the sheriff's department and delivered her into the custody of the sheriff's deputy.
9. From the date of her arrest and throughout her criminal prosecution resulting from the bank withdrawals, the bank gave momentum and impetus to the criminal prosecution by concealing or failing to disclose the facts and the course of events which occurred between the bank and appellant in connection with the withdrawals.
[9] If a full, complete, and accurate disclosure is made to a public officer, so that the decision to prosecute is left entirely to his discretion, the informant is not liable. However, if pertinent information is withheld, or the facts are misrepresented, there can be no intelligent exercise of the officer's discretion, and the person thus procuring the officer's action is not insulated from responsibility. 52 Am.Jur.2d, Malicious Prosecution § 57.
[10] Whether a defendant instigated criminal proceedings is a jury issue. Maiborne v. Kuntz, 56 So.2d 720 (Fla. 1952); Kilburn v. Davenport, 286 So.2d 241 (Fla. 3d DCA 1973), cert. den., 295 So.2d 301 (Fla. 1974). See also Pearce v. United States Fidelity and Guaranty Co., 476 So.2d 750 (Fla. 4th DCA 1985).
[11] See cases cited in 24 Fla.Jur.2d, False Imprisonment and Malicious Prosecution § 21 n. 45.
[12] Id; see also 52 Am.Jur.2d, Malicious Prosecution § 54.
[13] Silvia v. Zayre Corporation, 233 So.2d 856 (Fla. 3d DCA 1970), cert. den., 238 So.2d 112 (Fla. 1970).
[14] The principles of law governing the liability of an employer for malicious prosecution instituted or carried on by its agent or employee are those of agency in general. 24 Fla.Jur.2d, False Imprisonment and Malicious Prosecution § 26; Good Holding Company v. Boswell, 173 F.2d 395 (1949), cert. den., 338 U.S. 815, 70 S.Ct. 55, 94 L.Ed. 493. An agent's knowledge is imputed to his principal on two theories: 1) that an innocent third party may presume that the agents (here, the tellers and bank officials) will perform their duty and report all facts which affect the principal's interest; and 2) the legal identity of principal and agent (wherein the agent is considered the "alter ego" of the principal). 2 Fla.Jur.2d, Agency and Employment § 94. The principal is held liable for the tortious acts of his agent on the theory that where one of two innocent persons must suffer for the wrongful act of a third, he who gave the power to do the wrong must bear the burden of the consequences. Id. § 89.
[15] An accuser is charged with knowledge of those mitigating facts which should have come to his knowledge had he made reasonable inquiry and investigation. Annot., supra note 4, at 17, 33.
[16] Failure to discontinue prosecution after the charge appears unfounded may render the accuser liable for malicious prosecution. 52 Am.Jur.2d, Malicious Prosecution § 26.
[17] Lack of probable cause is a mixed question of law and fact. When the facts are in controversy, the question must necessarily be submitted to the jury with instructions from the court concerning the law applicable. 24 Fla. Jur.2d, False Imprisonment and Malicious Prosecution § 33.
[18] Whether malice existed is also a jury question. Id., § 32. The requisite malice may be either "actual" malice (sometimes called "malice in fact") or "legal malice", which may be inferred from the circumstances, such as want of probable cause, even though actual malice is not shown. Id. § 25.
[19] Summary judgments are precluded in actions in which intent or mental condition is an element. Trawick, Florida Practice and Procedure § 25-5 (1984).
[20] Annot., 87 A.L.R.2d 271, 284 (1963).
[21] Beverly Beach Properties, Inc. v. Nelson, 68 So.2d 604 (Fla. 1953), cert. den., 348 U.S. 816, 75 S.Ct. 27, 99 L.Ed. 643.
[22] The defendant's employees did not swear out an arrest warrant for the plaintiffs in Pokorny. 382 So.2d at 683.
[23] Beverly Beach Properties, Inc., 68 So.2d at 607.
[24] See 2 Fla.Jur.2d, Appellate Review §§ 421-22. But see Srybnik v. Ice Tower, Inc., 183 So.2d 224 (Fla. 3d DCA 1966), cert. den., 192 So.2d 493, (Fla. 1966).
[25] See cases cited in 2 Fla.Jur.2d, Appellate Review § 425 n. 47.
[26] See cases cited in 38 Fla.Jur.2d, Negligence § 90 n. 82.
[27] Id. § 19.
[28] See cases cited in 24 Fla.Jur.2d, False Imprisonment and Malicious Prosecution § 36 n. 41.
[29] Id. § 11.
[30] Setzer v. Tyre, 126 Fla. 139, 171 So. 224 (Fla. 1936).
[31] See 38 Fla.Jur.2d, Negligence § 3.
[32] See cases cited in 27 Fla.Jur.2d, Fraud and Deceit § 59.
[33] See footnote 8 for a summary of the allegations in the amended complaint.
[34] Although appellant has apparently not attempted to allege that she has been defamed by the bank's misrepresentations to John Lewis and the sheriff's deputy, it is at least arguable that a cause of action for defamation may exist in this case.